# EXHIBIT 1

Approved, SCAO

| | | Original - Court | 2nd copy - Plaintiff |
| --- | --- | --- | --- |
| | | 1st copy - Defendant | 3rd copy - Return |

| STATE OF MICHIGAN | SUMMONS | CASE NO. |
| --- | --- | --- |
| 6TH **JUDICIAL DISTRICT** **JUDICIAL CIRCUIT** **COUNTY PROBATE** | | 2021-187516-CB 21-                         NI JUDGE MARTHA D. ANDERSON |

**Court address**
1200 N. Telegraph Road, Pontiac, MI 48341

**Court telephone no.**
248-858-0582

| Plaintiff's name(s), address(es), and telephone no(s). Fitness International, LLC c/o 28400 Northwestern Highway Suite 200 - Essex Centre Southfield, MI 48034 | v | Defendant's name(s), address(es), and telephone no(s). Cole LA Bloomfield Hills, MI, LLC c/o The Corporation Company (Resident Agent) 40600 Ann Arbor Rd., Suite 201 Plymouth, MI 48170 |
| --- | --- | --- |
| Plaintiff's attorney, bar no., address, and telephone no. Michelle C. Harrell (P48768) Maddin, Hauser, Roth & Heller, P.C. 28400 Northwestern Highway, Suite 200 - Essex Centre Southfield, MI 48034   (248) 354-4060 | | This case has been designated as an eFiling case, for more information please visit www.oakgov.com/efiling. |

**Instructions:** Check the items below that apply to you and provide any required information. Submit this form to the court clerk along with your complaint and, if necessary, a case inventory addendum (form MC 21). The summons section will be completed by the court clerk.

## Domestic Relations Case

☐ There are no pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

☐ There is one or more pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint. I have separately filed a completed confidential case inventory (form MC 21) listing those cases.

☐ It is unknown if there are pending or resolved cases within the jurisdiction of the family division of the circuit court involving the family or family members of the person(s) who are the subject of the complaint.

## Civil Case

☑ This is a business case in which all or part of the action includes a business or commercial dispute under MCL 600.8035.

☐ MDHHS and a contracted health plan may have a right to recover expenses in this case. I certify that notice and a copy of the complaint will be provided to MDHHS and (if applicable) the contracted health plan in accordance with MCL 400.106(4).

☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.

☐ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has

been previously filed in ☐ this court, ☐ _____ Court, where

it was given case number _____ and assigned to Judge _____.

The action ☐ remains ☐ is no longer  pending.

Summons section completed by court clerk.

| **SUMMONS** |
| --- |

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. **YOU HAVE 21 DAYS** after receiving this summons and a copy of the complaint to **file a written answer with the court** and serve a copy on the other party **or take other lawful action with the court** (28 days if you were served by mail or you were served outside this state).
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.
4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

| Issue date 4/19/2021 | Expiration date* JUL 19 2021 | Court clerk Lisa Brown |
| --- | --- | --- |

*This summons is invalid unless served on or before its expiration date. This document must be sealed by the seal of the court.

MC 01   (9/19)   **SUMMONS**

MCR 1.109(D), MCR 2.102(B), MCR 2.103, MCR 2.104, MCR 2.105

**SUMMONS**

Case No. 21-          NI

**PROOF OF SERVICE**

TO PROCESS SERVER: You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

**CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE**

| ☐ **OFFICER CERTIFICATE** | OR | ☐ **AFFIDAVIT OF PROCESS SERVER** |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party (MCR 2.104[A][2]), and that: (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult, and I am not a party or an officer of a corporate party (MCR 2.103[A]), and that: (notarization required) |

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____
List all documents served with the summons and complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments, on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |
| | | |

I declare under the penalties of perjury that this proof of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Fee $ | | Signature |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled | Fee $ | **TOTAL FEE** $ | Name (type or print) |
| | | | | Title |

Subscribed and sworn to before me on _____, _____ County, Michigan.
Date

My commission expires: _____   Signature: _____
Date                                                    Deputy court clerk/Notary public

Notary public, State of Michigan, County of _____

**ACKNOWLEDGMENT OF SERVICE**

I acknowledge that I have received service of the summons and complaint, together with _____
Attachments

_____ on _____
Day, date, time

_____ on behalf of _____
Signature

This case has been designated as an eFiling case, for more information please visit www.oakgov.com/efiling.

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND
BUSINESS COURT

FITNESS INTERNATIONAL, LLC, f/k/a
L.A. FITNESS INTERNATIONAL, LLC, a
California limited liability company,

2021-187516-CB

Case No.   2021-          - CB
Hon.   JUDGE MARTHA D. ANDERSON

Plaintiff,

v

COLE LA BLOOMFIELD HILLS MI, LLC,
a Delaware limited liability company,
successor-in-interest to TIFFRAE, L.L.C.,

**The case qualifies for the Business Court and the matter should be identified as Business Court eligible pursuant to MCL 600.8031 and MCL 600.8035**

Defendant.

_____/

MADDIN, HAUSER, ROTH, & HELLER, P.C.
Michelle C. Harrell (P48768)
Attorneys for Plaintiff
28400 Northwestern Highway
Suite 200 – Essex Centre
Southfield, MI 48034
(248) 354-4030
mharrell@maddinhauser.com

KLEHR HARRISON HARVEY
BRANZBURG LLP
A. Grant Phelan (PA ID 65741)
(*Pro Hac Vice* admission pending)
Mary Ellen O'Laughlin (PA ID 31381)
(*Pro Hac Vice* admission pending)
Co-Counsel for Plaintiff
1835 Market Street, Suite 1400
Philadelphia, PA 19103
(215) 569-2700
gphelan@klehr.com
molaughlin@klehr.com

_____/

## **COMPLAINT**

There is no prior resolved or pending action between these parties arising out of the same transaction and occurrence alleged in this Complaint.

03412387 v1

Plaintiff Fitness International, LLC f/k/a L.A. Fitness International, LLC, through its counsel, and for its Complaint against Defendant Cole LA Bloomfield Hills, MI, LLC, states as follows:

## INTRODUCTION

1.    The government mandated stay-at-home orders and non-essential business closures in connection with the 2019 Novel Coronavirus Disease ("COVID-19") pandemic, have had an unanticipated and catastrophic impact on the economy, the full extent of which remains unknown.

2.    Plaintiff is a nationwide operator of health clubs and fitness centers, including in Michigan, is among the many businesses that have been materially and negatively impacted by the government mandated closures due to COVID-19.

3.    Indeed, due to the nature of COVID-19 and the perceived manner in which it is spread, health clubs and fitness centers were included in the first closure orders in Michigan and have been among the last permitted to reopen under phased reopening orders, subject to specific guidelines and restrictions, including an initial twenty-five percent (25%) cap on occupancy.

4.    Plaintiff leases premises for the operation of its health club and fitness center located in Bloomfield Hills, Michigan from Defendant.

5.    From its initial expression of interest in the property that is the subject of this dispute, both parties were aware of Plaintiff's intended use of the property.

6.    It is the unique combination of Plaintiff's use and the attributes of Defendant's property that provided the impetus for the execution of the parties' lease and, in fact, the parties' lease specifies that the use of the leased premises shall be for a health club and fitness center.

7.    As is set forth below, it was illegal for Plaintiff to use the Bloomfield Hills, Michigan premises as a result of certain closure orders by state and government officials due to

COVID-19.

8. Although Plaintiff is again permitted to operate its business from the premises, the government has imposed material restrictions on Plaintiff's use and occupancy of the premises.

9. During the period of the government mandated closures, the lease's force majeure provision excuses Plaintiff's obligation to pay rent, the essential purpose of the parties' lease was frustrated, Plaintiff did not receive the benefit of its bargain, and performance was rendered temporarily impossible and impracticable because Plaintiff was prohibited from using the Bloomfield Hills, Michigan premises and did not generate any revenue, as membership dues/fees/monetary payments were frozen.

10. When Defendant insisted upon receipt of rent in full for the period during which Defendant was in breach of the parties' lease and performance under the lease was both impossible and impracticable, Plaintiff asserted its rights under the parties' lease and applicable law to abate rent for that period.

11. Defendant retaliated against Plaintiff's assertion of its rights under the lease and applicable law, including by sending Plaintiff a notice of default, demanding payment of rent allegedly due and threatening eviction.

12. Accordingly, Plaintiff brings this action, seeking seeks a declaration as to its rights under the lease, either based upon the lease or based upon applicable law as applied to the facts.

## **PARTIES, JURISDICTION AND VENUE**

13. Plaintiff is a California limited liability company and is registered and qualified to do business in the State of Michigan, and conducts business Oakland County, Michigan.

14. Upon information and belief, Defendant Cole LA Bloomfield Hills MI, is a Delaware limited liability company registered to do business in the State of Michigan, and

conducts business in Oakland County, Michigan.

15.     Upon information and belief, Defendant owns the real property, together with its buildings and improvements, located at 2050 S. Telegraph Road, Bloomfield Hills, Michigan 48302.

16.     This Court has subject matter jurisdiction, and general and limited personal jurisdiction pursuant to MCL §§ 600.605, 600.611, and 600.721.

17.     Plaintiff seeks a declaratory judgment, and this Court also has jurisdiction pursuant to MCR 2.605.

18.     Venue is proper in this Court because the cause of action accrued in Oakland County, the property is located in Oakland County, and the parties conduct business in Oakland County.

## GENERAL ALLEGATIONS
### The Parties' Lease

19.     Plaintiff, as tenant ("Tenant") and Defendant, as landlord ("Landlord"), are parties to that certain Retail Lease dated as of March 5, 2007, as amended (the "Lease"), for the premises located at 2050 S. Telegraph Road, Bloomfield Hills, Michigan 48302 (the "Premises"). A copy of the Lease is possession of Defendant.

20.     The original parties to the Lease were Tiffrae, L.L.C., a Michigan limited liability company, as Landlord, and Plaintiff, as Tenant.

21.     Upon information and belief, Defendant is the successor-in-interest to Tiffrae, LLC.

22.     Pursuant to the Lease, Tenant leases the Premises for the operation of a health club and fitness facility. *Lease, §1.9.*

23.     In consideration for the rents agreed to be paid and of the covenants and

agreements made, Landlord demises and leases the Premises to Tenant.  *Lease, §2.1.*

24.     In consideration for Tenant entering into the Lease and as an inducement for Tenant to lease the Premises, Landlord made representations, warranties and covenants in the Lease and Landlord expressly acknowledged that (i) each such representation, warranty and covenant is material to Tenant and is being relied upon by Tenant in entering into the Lease, (ii) each such representation, warranty and covenant shall survive the execution and delivery of the Lease by Tenant and Landlord, and (iii) Landlord shall indemnify, defend, and hold harmless Tenant from and against any and all losses, demands, claims, liabilities, damages, costs and expenses (including without limitation, reasonable attorneys' fees and expenses) arising as a result of any inaccuracy or breach of any representation, warranty or covenant of Landlord set forth in the Lease. *Lease, § 2.2.*

25.     In the Lease, Landlord represented, agreed, and covenanted that Tenant would have exclusive control and use of the Premises. *Lease, §1.9.*

26.     In the Lease, Landlord represented, agreed, and covenanted to Tenant that Tenant shall have the right throughout the term of the Lease to operate the Premises for a health club and fitness facility. *Lease, §1.9.*

27.     In the Lease, Landlord represented, agreed, and covenanted to Tenant that the Premises were, and would remain, free and clear of all conditions and restrictions which might in any manner or to any extent prevent or adversely affect the use of the Premises or disturb Tenant's peaceful and quiet enjoyment thereof. *Lease, §2.2.*

28.     In the Lease, Landlord represented, agreed, and warranted to Tenant that Tenant will quietly enjoy the Premises for the term of the Lease without hindrance or interruption. *Lease, §22.1.*

29.     In the Lease, Landlord represented, agreed, and covenanted that Tenant shall at all

times have peaceful and quiet possession and enjoyment of the Premises. *Lease, §2.2.*

30.     In the Lease, Landlord represented, agreed, and covenanted that Tenant shall quietly enjoy the Premises for the entire term of the Lease without any hindrance or interruption. *Lease, §22.1.*

31.     Pursuant to the Lease, among other things, in consideration and exchange for the Premises being free and clear of all restrictions and/or legal impediments which might prevent Tenant's use of the Premises for the operation of a health club and fitness facility and Tenant's peaceful and quiet use and enjoyment of the Premises, Tenant is to pay minimum annual rent in equal monthly installments (the "Rent"). *Article V.*

32.     Tenant's obligation to pay Rent is conditioned upon Landlord's representations, warranties and covenants to Tenant in the Lease, including the affirmative obligation to provide Tenant with peaceful use and enjoyment of the Premises. *Lease, §2,1.* As a monthly installment agreement, Landlord's obligations under the Lease accrue each month. *Lease, Article V.*

33.     An indicia of the parties' meeting of the minds concerning their intent to excuse Tenant from paying Rent and/or to allow Tenant to abate Rent when Tenant is unable to use the Premises is evidenced by the taking provisions of Article XVI of the Lease which provide that if any portion of the Premises is taken and the Lease does not terminate, Tenant's obligations for Rent under the Lease shall be equitably abated following the taking based upon the extent of the interference with the operation of Tenant's business from the Premises. *Lease, §16.1.*

34.     Pursuant to the Lease, if either party is delayed or hindered in or prevented from the performance of any act required under the Lease because of lockouts, inability to procure labor, restrictive laws, other casualty, or other reason of a similar or dissimilar nature beyond the reasonable control of the party delayed (a "Force Majeure Event"), performance of such act shall be excused for the period of delay caused by the Force Majeure Event. *Lease, §22.3.*

35.    The Lease is construed in accordance with the laws of the State of Michigan. *Lease. §22.14.*

## The 2019 Novel Coronavirus Disease And Its Effect

36.    On March 10, 2020, Michigan Governor Gretchen Whitmer issued Executive Order ("EO") No. 2020-04, declaring a state of emergency in Michigan due to COVID-19.

37.    On March 11, 2020, the World Health Organization declared COVID-19 to be a global pandemic (the "COVID-19 Pandemic").

38.    On March 13, 2020, President Trump issued a Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak.

39.    On March 15, 2020, Governor Whitmer issued EO 2020-9, ordering all gyms and fitness centers to close, effective Monday, March 16 at 3:00 p.m., to prevent further spread of COVID-19.  By EO 2020-21 dated March 23, 2020, Governor Whitmer also ordered all residents of Michigan to stay at home with very limited exceptions.  Tenant ceased operating its health club at the Premises on March 17, 2020.

40.    Gyms and fitness centers were permitted to begin reopening in Oakland County, Michigan on September 9, 2020, subject to specific guidelines and material restrictions on Tenant's use and occupancy of the Premises, including a cap on occupancy as well as the loss of critical amenities, which restrictions remain in effect as of the date of this filing.  The cap on occupancy and the loss of such critical amenities materially, adversely affects Tenant's use of the Premises as a health club and fitness facility.

## Landlord's Actions In Reaction To The COVID-19 Pandemic And Closures

41.    From March 17, 2020 through September 8, 2020, it was illegal for Tenant to use the Premises due to the government mandated closure orders (the period of closure is referred to herein as the "Closure Period").

42.     When on September 9, 2020, Tenant was permitted to once again operate its business from the Premises, the government imposed many restrictions on Tenant's operations, including, without limitation, an initial capacity of only twenty-five percent (25%) at all times as well as a loss of critical amenities (the "On-Going Restrictions"). As of the date of this filing the On-Going Restrictions are still in place, with the capacity limit increased to only thirty percent (30%) effective March 15, 2021. Tenant anticipates that the cap on occupancy and the material restrictions on operations will continue indefinitely.

43.     The government mandated closures resulting from the COVID-19 Pandemic are unanticipated events, completely out of the control of Tenant, and catastrophic in result.

44.     Pursuant to the Lease, if either party is delayed or hindered in or prevented from the performance of any act required under the Lease because of lockouts, inability to procure labor, restrictive laws, other casualty or other reason of a similar or dissimilar nature beyond the reasonable control of the party delayed (a "Force Majeure Event"), performance of such act shall be excused for the period of delay caused by the Force Majeure Event.

45.     During the Closure Period, the Force Majeure Event of the government orders prevented Tenant from operating its business from the Premises and Tenant timely placed Landlord on notice of such a Force Majeure Event.

46.     While the provision further states that delays or failures to perform which can be cured by the payment of money shall not be Force Majeure Events, the cause of the delay, hindrance or prevention at issue here, however, could not be cured by the payment of money, as there is no amount of money that could have been paid to eliminate the Force Majeure Event.

47.     Even if Tenant had paid Rent during the government mandated closures, the underlying problem would not have been solved — the government mandated closures would still prohibit Tenant from operating its business from the Premises.

48.     The essential purpose of the Lease and, in turn, the totality of the bargain that Tenant is to receive under and through the Lease, is to allow Tenant to use the Premises to operate a full service health club and fitness center for Tenant's members and invitees.

49.     As Tenant was prohibited from using the Premises by the government mandates, the purpose of the Lease is frustrated.

50.     During the Closure Period, Tenant was prohibited from using the Premises, rendering performance under the Lease impossible.

51.     During the Closure Period performance under the Lease was impracticable because Tenant was prohibited from using the Premises and Tenant received no revenue as dues/monetary payments from its members were frozen.

52.     As represented and warranted to Tenant by Landlord in the Lease, Landlord was to possess ownership of the property free and clear of any and all conditions and/or restrictions that in any manner prevent or affect the use of the Premises by Tenant as a health club and fitness facility.

53.     During the government mandated closures, Landlord did not own the property free and clear of such conditions and restrictions, in violation of its representations, covenants, and warranties.

54.     As a result, Landlord breached its covenants and warranties and therefore breached the Lease, thereby excusing any obligation to pay Rent.

55.     As represented and warranted to Tenant by Landlord in the Lease, Tenant is to have, at all times, full, quiet and peaceful use and enjoyment of the Premises.  During the Closure Period, Tenant did not have full, quiet and peaceful use and enjoyment of the Premises as covenanted and warranted by Landlord.

56.     As a result, Landlord breached its covenants and warranties and therefore

breached the Lease, thereby excusing any obligation to pay Rent.

57.     As represented and warranted to Tenant by Landlord in the Lease, Landlord must indemnify, defend, and hold harmless Tenant from and against any and all losses, damages, costs and expenses arising as a result of any inaccuracy or breach of any representation, warranty or covenant of Landlord set forth in the Lease.

58.     During the Closure Period, and the period the On-Going Restrictions are in place, Landlord breached its representations, warranties and covenants to Tenant in the Lease and/or the representations, warranties and covenants to Tenant were inaccurate, causing Tenant losses, damages, costs and expenses.

59.     As a result,  Landlord is obligated to indemnify Tenant against its losses, damages, costs and expenses, including its attorneys' fees.

60.     During the Closure Period, Tenant did not have the use and enjoyment of the Premises and Tenant was not legally permitted to operate its business from the Premises.

61.     Landlord's compliance with its representations, agreements and warranties in the Lease is a condition precedent to Tenant's obligation to pay Rent.

62.     Tenant's use and enjoyment of the Premises is a condition precedent to Tenant's obligation to pay Rent.

63.     Tenant's ability to use the Premises and operate its business from the Premises is a condition precedent to its obligation to pay Rent.

64.     As the Lease is an installment agreement, Landlord's obligation to keep the property free and clear of any and all conditions and/or restrictions that in any manner prevent or affect the use of the Premises by Tenant as a health club and fitness facility was constant, consistent, repetitive, and repeatable each and every month of the Lease.

65.     The closures amounted to a temporary condemnation of the Premises under the Lease. Tenant's obligation for the payment of Rent was abated during the period following the temporary condemnation/taking through the date Tenant was legally permitted to resume operations at the Premises.

66.     To date, the government mandated closures due to the COVID-19 Pandemic led to the filing for protection under the U.S. Bankruptcy Code by national as well as regional gyms, including Gold's Gym International, Inc., 24 Hour Fitness Worldwide, Inc., Town Sports International, and YouFit Health Clubs, LLC, because, upon information and belief, the essential purpose of their various leases has been frustrated and/or circumstances have made it impossible and/or impracticable to operate its business from the premises and to generate revenue under the closures and on-going restrictions enacted by various governmental entities.

### Tenant Asserts its Rights As A Result Of COVID-19 And The Closures, Tenant Reserves its Rights And Then Landlord Retaliates Against Tenant

67.     By March 2020, Tenant had paid Landlord over Twelve Million Dollars ($12,000,000.00) in Rent under the Lease since the Rent commencement date in July of 2008.

68.     Tenant reasonably anticipated that Landlord would respond to the closures by accepting Tenant's right to abate Rent and to proportionately reduce rent during the period the On-Going Restrictions are in place.

69.     Instead, although Landlord was aware of the COVID-19 Pandemic and the closures, Landlord demanded that Tenant pay Rent in full, under threat of eviction.

70.     Tenant asserted its rights under the Lease and applicable law to abate Rent during the period of the closures when it was illegal for Tenant to have the use and enjoyment of the Premises, in breach of the Lease.

71.     In retaliation against Tenant for the assertion of its rights under the Lease and

applicable law, Landlord sent Tenant a "Notice to Pay Rent or Vacate Premises" dated April 9, 2021 (the "Purported Notice"), demanding Rent and/or directing Tenant to vacate the Premises, threatening eviction, and making statements and demands that either are intentionally inaccurate or are willfully ignorant of the provisions in the Lease and the underlying circumstances. A copy of the Purported Notice is attached as **Exhibit A**.

72.     Such conduct is in bad faith and demonstrates Landlord's failure to engage in the good faith and fair dealing conduct that Landlord must employ in dealing with Tenant, its contracting counterpart.

73.     Tenant paid Rent in March 2020 and, although Tenant paid Rent for the period of March 17 through March 31, 2020 when it was not permitted to use the Premises, Landlord has failed and refused to reimburse Tenant for Rent it paid for the period of March 17 through March 31, 2020 when it was not permitted to use the Premises.

74.     Further, Tenant has consistently paid Rent since October 1, 2020 as Tenant was once again legally permitted to operate its health club and fitness center at the Premises.

75.     However, Tenant has been subject to the On-Going Restrictions since Tenant was once again legally permitted to operate its health club and fitness center at the Premises, so Tenant also is entitled to (i) reimbursement for amounts it has overpaid in Rent during the period of the On-Going Restrictions, and (ii) to pay a reduced amount going forward as the On-Going Restrictions remain in effect as of the date of this filing.

76.     In issuing the Purported Notice and refusing to comply with the provisions in the Lease including, without limitation, the Force Majeure provision, which expressly excuses Tenant's obligation to pay Rent, Landlord breached the Lease and otherwise failed to engage in the good faith and fair dealing conduct that Landlord must employ in dealing with Tenant, its contracting counterpart.

77.     In issuing the Purported Notice and refusing to comply with the provisions in the Lease, and proportionately reducing Rent during the period of time the On-Going Restrictions are in place, Tenant was denied the credits to which it was entitled and has had to incur costs and expenses, including attorneys' fees, in responding to the Purported Notice and the improper and unfounded positions taken by Landlord.

78.     In failing to (a) continue to possess ownership of the Premises free and clear of all conditions or restrictions that prevented and adversely affected Tenant's use of the Premises for Tenant's operation of a health club and fitness facility, (b) allow Tenant peaceful and quiet use and enjoyment of the Premises, (c) provide a credit to Tenant for Rent paid during the period of the closures, (d) allow Tenant to abate Rent in accordance with the provisions in the Lease and proportionately reduce Rent during the period of time the On-Going Restrictions are in place, and (e) indemnify Tenant for its losses, damages, costs and expenses, Landlord has breached the Lease.

79.     The Lease provides that in the event action is instituted relating to the Lease, the prevailing party shall be entitled to recover from the unsuccessful party for its reasonable disbursements incurred in connection with the action, and for its reasonable attorneys' fees. *Lease, §22.7.*

80.     Plaintiff reserves the right to plead further orally upon trial of this matter.

## <u>COUNT I</u><br>DECLARATORY JUDGMENT

81.     Plaintiff incorporates by reference the foregoing paragraphs as though fully set forth herein.

82.     Plaintiff and Defendant are interested in the terms of the Lease.

83.     A justiciable controversy exists with respect to whether Plaintiff is obligated to

pay Rent during the Closure Period and any future closure period.

84.    A justiciable controversy exists with respect to whether Plaintiff's performance under the Lease is excused during the Closure Period and any future closure period under operation of Michigan law.

85.    A justiciable controversy exists with respect to whether Plaintiff's performance under the Lease is excused during the Closure Period due to the Force Majeure Event of the government mandated closures.

86.    A justiciable controversy exists with respect to whether the intent and purpose of the Lease has been frustrated during the Closure Period and will be frustrated during any future closure period.

87.    A justiciable controversy exists with respect to whether the performance of the Lease is temporarily impossible during the Closure Period and any future closure period.

88.    A justiciable controversy exists with respect to whether the performance of the Lease is impracticable during the Closure Period and any future closure period.

89.    A justiciable controversy exists with respect to whether Defendant is required to return to Plaintiff all monies paid by Plaintiff to Defendant during the Closure Period and any future closure period.

90.    A justiciable controversy exists with respect to Defendant must indemnify Plaintiff for its losses, damages, costs and expenses during the period of time Plaintiff is subject to the On-Going Restrictions.

91.    A justiciable controversy exists with respect to whether Rent during the period of time Plaintiff is subject to the On-Going Restrictions is proportionately abated (*e.g.*, if 30% capacity, Rent is reduced to 30%, which is $30,612.31 per month).

92.    Accordingly, Plaintiff seeks a judgment in its favor and against Defendant

declaring that Plaintiff is entitled to the declarations of its rights and privileges as set forth above.

WHEREFORE, Plaintiff respectfully requests that the Court enter a declaratory judgment as follows:

A.   Plaintiff has no obligation to pay Rent to Defendant during the Closure Period or any future closure period;

B.   Defendant is required to excuse Plaintiff's performance under the Lease during the Closure Period or any future closure period by operation of Michigan law;

C.   Defendant is required to excuse Plaintiff's performance under the Lease during the Closure Period or any future closure period due to the Force Majeure Event of the government mandated closures;

D.   Defendant is required to excuse Plaintiff's performance under the Lease because the parties' intent and purpose in entering the Lease is frustrated during the Closure Period and will be frustrated during any future closure period;

E.   Defendant is required to excuse Plaintiff's performance under the Lease because performance is temporarily impossible during the Closure Period and any future closure period;

F.   Defendant is required to excuse Plaintiff's performance under the Lease because performance is impracticable during the Closure Period and any future closure period;

G.   Defendant is required to return to Plaintiff all monies paid by Plaintiff to Defendant during the Closure Period and any future closure period;

H.   Defendant must indemnify Plaintiff for its losses, damages, costs and expenses during the period of time Plaintiff is subject to the On-Going Restrictions;

I.   Rent during the period of time Plaintiff is subject to the On-Going Restrictions is

proportionately reduced (*e.g.*, if 30% capacity, Rent is reduced to 30%);

J.  To the extent the Court determines Defendant is owed any portion of Rent, Plaintiff be given time to perform;

K.  Plaintiff may recover its costs and reasonable attorneys' fees; and

L.  Plaintiff may recover such other relief deemed just and reasonable.

MADDIN, HAUSER, ROTH, & HELLER, P.C.

*/s/ Michelle C. Harrell*
Michelle C. Harrell (P48768)
Attorneys for Plaintiff
28400 Northwestern Highway
Suite 200 – Essex Centre
Southfield, MI 48034
(248) 354-4030
mharrell@maddinhauser.com

KLEHR HARRISON HARVEY
BRANZBURG LLP

A. Grant Phelan (PA ID 65741)
(*Pro Hac Vice* admission pending)
Mary Ellen O'Laughlin (PA ID 31381)
(*Pro Hac Vice* admission pending)
Co-Counsel for Plaintiff
1835 Market Street, Suite 1400
Philadelphia, PA 19103
(215) 569-2700
gphelan@klehr.com
molaughlin@klehr.com

Dated: April 19, 2021

# EXHIBIT A

# Buchalter

RECEIVED
APR 1 2 2021
LA FITNESS

1420 Fifth Avenue
Suite 3100
Seattle, WA 98101
206-319-7052 Phone
206-660-4341 Cell

206.319.7036 Direct
bthoreson@buchalter.com

April 9, 2021

## NOTICE TO PAY RENT OR VACATE PREMISES

**Sent Via Federal Express**

TO:      Fitness International, LLC
             Attention: Lease Administration
             3161 Michelson Dr., Ste. 600
             Irvine, CA 92612

Reference is made to that certain Lease agreement dated March 5, 2007, as amended (the "Lease") between Cole LA Bloomfield Hills MI, LLC, a Delaware limited liability company (the "Landlord") and L.A. Fitness International, LLC, a California limited liability company (the "Tenant").

The Lease is for leased premises comprising Premises described in § 1.2 of the Lease, and which is located at 2050 S. Telegraph Rd., Bloomfield Hills, MI 48302L (the "Leased Premises").

### Default in Payment of Rent

The Tenant has failed to pay Rent and other charges due and owing under the Lease for April, May, June, July, August and September of 2020 totaling **$612,246.12**.

Therefore, within ten (10) days from the date of deemed service of this Notice to Pay Rent or Vacate Premises (the "Notice") you must either (i) pay the total amount of **$612,246.12** now due and owing to the Landlord in the manner required by the Lease, or (ii) vacate the Leased Premises and deliver the same to the Landlord. *See* Lease, Article 19.1 and Michigan Complied Laws 600.5714 et. seq.

buchalter.com

Los Angeles
Napa Valley
Orange County
Portland
Sacramento
San Diego
San Francisco
Scottsdale
Seattle

BN 45124284v1

# Buchalter

April 9, 2021
Page 2

## Failure to Pay Rent

This Notice is given pursuant to the Michigan Complied Laws 600.5714(1)(a) which provides that a tenant may be ejected when it has failed or refuses to pay the rent when due or when demanded or the terms of the Lease have been violated. Rent for each unpaid month was due and owing on the fifth day of each respective month, and was not paid when due. As a result, an eviction lawsuit may be instituted against you ten (10) days after the date of deemed service of this Notice if you have not paid Rent and other charges owing as specified above or vacate the Leased Premises within each applicable time frame.

Should you continue to hold over the Premises, you will also be liable for other damages, as provided by the Lease, and Landlord's attorneys' fees and costs, as provided by Article 22.7 of the Lease.

If you elect to abandon the Leased Premises in the aforesaid manner, be advised you will not be relieved of your obligations to pay amounts now due or which may become due in the future pursuant to the Lease. *See* Lease, Article 19.2. Landlord hereby reserves any and all other rights and remedies to which it may be entitled under the Lease or at law or equity for the above default and any other defaults not described herein, including without limitation the right to terminate the Lease and recover possession of the Premises with or without terminating the Lease, recover the rent demanded herein, and recover damages, accelerated as permitted, and attorneys' fees and costs of suit incurred by Landlord in connection with any of the foregoing.

Dated:  April 9, 2021

BUCHALTER
A Professional Corporation

*Bradley P. Thoreson*
Bradley P. Thoreson
Attorneys for Landlord
1420 Fifth Ave., Ste. 3100
Seattle, WA  98101
(206) 660-4341

BPT:mlb
cc:  Clelia Abruzzi

BN 45124284v1

# EXHIBIT 2

**McWhorter, Robert S.**

| | |
|---|---|
| **From:** | McWhorter, Robert S. |
| **Sent:** | Friday, May 7, 2021 3:23 PM |
| **To:** | 'Molaughlin@klehr.com' |
| **Cc:** | 'gphelan@klehr.com'; Thoreson, Brad P.; 'Newman, Max J.'; Ronayne, Louis |
| **Subject:** | Fitness International, LLC v. Cole LA Bloomfield Hills MI, LLC [IWOV-BN.FID3426717] |

Mary Ellen

It was a pleasure speaking with you. This email confirms our telephone conversation from today, in which you confirmed me that the Complaint in the above referenced matter was served upon Defendant on April 23, 2021 and that per your local counsel, an answer or other responsive pleading is due on or before **May 21, 2021**. Presumably, that means the Complaint served by mail or served outside of the state of Michigan.

If this email does not accurately reflect your understanding, please advise me in writing as soon as possible.

Rob McWhorter

# Buchalter

**Robert S. McWhorter**
Shareholder
**T** (916) 945-5188
**C** 916-899-1099
rmcwhorter@buchalter.com

500 Capitol Mall, Suite 1900
Sacramento, CA 95814-4737
www.buchalter.com | Bio

1

# EXHIBIT 3

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 1:20-cv-21647

PALM SPRINGS MILE ASSOCIATES, LTD.,
a Florida limited partnership,

     Plaintiff,

vs.

FITNESS INTERNATIONAL, LLC, a
California limited liability company,

     Defendant.

_____/

### <u>DECLARATION OF DIANN D. ALEXANDER</u>

I, Diann D. Alexander, declare as follows:

1.     I am an adult individual and I have personal knowledge of the facts set forth in this Declaration. I understand that the Declaration is being used in support of the Motion to Dismiss of Defendant Fitness International, LLC in the above captioned matter.

2.     I am the Director of Lease Administration, Real Estate Counsel to Fitness International, LLC.

3.     I read the Complaint that was filed in this matter on April 20, 2020, including Plaintiff's allegations in paragraph 2 identifying Plaintiff and its partners and their respective principal places of business, citizenship and/or domicile.

4.     Fitness International, LLC is a California limited liability company with its principal place of business in California.

5.     Fitness International, LLC has three members: (1) LAF, Inc.; (2) The Seidler

Company, LLC; and (3) Seidler Fitness Holdings II, LP.

6.　　LAF, Inc. is incorporated in the State of California with its principal place of business at 3161 Michelson Drive, Suite 600, Irvine, CA 92612. LAF, Inc. is a citizen of California.

7.　　The Seidler Company, LLC is a Delaware limited liability company with its principal place of business in California at 4640 Admiralty Way, Suite 1200, Marina Del Rey, CA 90292-6642. The Seidler Company, LLC has three members, all of whom are individuals who are domiciled in the State of California.

8.　　Seidler Fitness Holdings II, LP is a Delaware limited partnership with a principal place of business in California at 4640 Admiralty Way, Suite 1200, Marina del Rey, CA 90292-6642. Seidler Fitness Holdings II, LP has one (1) general partner, and one hundred (100) limited partners. The general partner of Seidler Fitness Holdings II, LP is The Seidler Company LLC.

9.　　The one hundred (100) limited partners of Seidler Fitness Holdings II, LP consist of ninety-seven (97) individuals and three (3) entities: (i) Cressey Family Partnership; (ii) Seidler North, LP; and (iii) Pain in the Donkey, LLC.

- The ninety-seven (97) individuals who are limited partners of Seidler Fitness Holdings II, LP are domiciled in, and citizens of, the States of California, Idaho, Massachusetts, New Jersey, and Virginia.

- Cressey Family Partnership consists of individuals who are domiciled in, and citizens of, the State of Illinois.

- Seidler North, LP is a Delaware limited partnership. The general partner of Seidler North, LP is The Seidler Company, LLC, whose principal place of

business is in California at 4640 Admiralty Way, Suite 1200, Marina del Rey, CA 90292-6642. The limited partners of Seidler North LP are domiciled in, and citizens of, the State of California.

- Pain in the Donkey LLC is a California limited liability company whose members consist of (i) six (6) individuals who are domiciled in, and citizens of, the State of California, and (ii) The Pain in the Donkey 2018 Irrevocable Trust, which is domiciled in South Dakota.

10.    The information set forth in paragraphs 4 through 9 above concerning places of formation, incorporation, principal places of business, citizenship and/or domicile is true and accurate as of April 20, 2020, the date of the filing of Plaintiff's Complaint.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Diann D. Alexander, Esquire

3